**HARRIS COUNTY FLOOD CONTROL DISTRICT, Appellant,**

v.

**Rogers ROBERTS, City of Houston, Jessie R. Lay and Unknown Owners, State of Texas, American Residential Service, Inc., Leasecomm Corporation, Abbott Laboratories, Inc., Harris County, Texas, Houston Community College System, Houston Independent School District, and Clear Channel Outdoor, Inc., Appellees.**

No. 14–06–00696–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 3, 2008.

---

Laura Fiorentino Cahill, Michael R. Hull, Houston, for appellant.

J. Allen Smith, Katherine Leigh Killingsworth, Scott James Conrad, Dallas, Andrew Paul Toubin, Houston, for appellees.

Panel consists of Justices ANDERSON, FOWLER, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

A condemning authority asserts that the trial court erred in valuing a leasehold interest because, as a matter of law, a billboard sign structure erected on the condemned land was not a fixture that had become part of the realty at the time of the taking. Under the applicable standard of review, we conclude that the trial evidence in the bench trial is conflicting on

this issue and that the condemning authority has not shown that, as a matter of law, the billboard sign structure in this case was not a fixture at the time of the taking. The condemning authority also asserts that the trial court erred in admitting certain expert testimony; however, we conclude that the authority failed to preserve error on this point. We affirm the trial court's judgment.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Appellant Harris County Flood Control District (hereinafter the "District") filed this action seeking to condemn the interests of the following appellees in 0.6156 acres of land in Harris County, Texas (hereinafter "Land"): Rogers Roberts, City of Houston, Jessie R. Lay and Unknown Owners, State of Texas, American Residential Service, Inc., Leasecomm Corporation, Abbott Laboratories, Inc., Harris County, Texas, Houston Community College System, and Houston Independent School District (hereinafter collectively "Other Owners"). The District also sought to condemn the leasehold interest in the Land owned by appellee Clear Channel Outdoor, Inc. ("Clear Channel"), but the District did not seek to condemn personal property, which it alleged included the billboard sign structure that was attached to the Land at the time of the taking (hereinafter "Sign Structure"). The District and Clear Channel disputed the amount of just compensation that the District was required to pay Clear Channel for its leasehold interest in the Land (hereinafter "Leasehold Interest").

At trial, Clear Channel's expert testified that the fair market value of the Leasehold Interest on the date of the taking was $63,500, based on two approaches that yielded valuations of the Leasehold Inter-

est at $58,400 and $71,100. The District's expert, however, testified that the fair market value of the Leasehold Interest on the date of the taking was $53.98. After a bench trial, the trial court found that the fair market value of the Leasehold Interest on the date of the taking was $60,000, and the trial court rendered judgment awarding this amount to Clear Channel as just compensation for the taking of its Leasehold Interest.[1] The District appeals the trial court's judgment.

## II.   STANDARD OF REVIEW

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex.2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819. Because findings of fact in a bench trial have the same force and dignity as a jury verdict, we review them for legal sufficiency of the evidence under the same standards we apply in reviewing a jury's findings. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994).

## III.   ISSUES AND ANALYSIS

### A.   Does the trial evidence show that, as a matter of law, the Sign Structure was not a fixture at the time of the taking?

▅▅▅▅ Under its first issue, the District argues that, as a matter of law, the Sign

1.   The trial court also rendered judgment awarding the Other Owners a total of $5,033 as just compensation for the taking of their

real property interests. None of the Other Owners have appealed the trial court's judgment.

Structure was not a fixture at the time of the taking. Therefore, the District argues, Clear Channel is entitled only to the bonus value of the lease as just compensation, an amount which the District's expert testified was $53.98. Three factors are relevant in determining whether personalty has become a fixture, that is, a permanent part of the realty to which it is affixed: (1) the mode and sufficiency of annexation, either real or constructive; (2) the adaptation of the article to the use or purpose of the realty; and (3) the intention of the party who annexed the chattel to the realty.[2] *Logan v. Mullis*, 686 S.W.2d 605, 607 (Tex.1985). The third criterion dealing with intention is preeminent, whereas the first and second criteria constitute evidence of intention. *Id.* Intent is made apparent by objective manifestations. *See Logan*, 686 S.W.2d at 608. If personalty would be a fixture if attached to the land by the fee owner of the land, then a condemning authority must pay for such property as real estate in a condemnation action. *Brazos River Conserv. & Reclam. Dist. v. Adkisson*, 173 S.W.2d 294, 299 (Tex.Civ.App.-Eastland 1943, writ ref'd).

At trial, Michelle Costa, President of Clear Channel, testified as follows:

- The Sign Structure has been in place and continually operated by Clear Channel or its predecessors since 1966.
- The Sign Structure has poles and holds up a big sign. Underneath the poles are footings. A galvanized face structure is affixed to either side. The Sign Structure has metal catwalks and lighting fixtures.

- The construction of the Sign Structure required various permits and inspections from the City of Houston. The City of Houston also requires a permit for the operation of the Sign Structure.
- The construction of a structure like the Sign Structure is a "pretty substantial operation," involving the use of heavy equipment, including an auger and a crane to set the footings in the poles and to add the catwalk.
- Removing the Sign Structure would not be like moving a trash can off of the Land. It would be a construction project requiring heavy equipment, cranes, and certified crane operators.
- The removal of a structure like the Sign Structure typically "takes a pretty significant toll on the land, depending on the structure itself, and where it's situated, how wet the property happens to be, what kind of footings are underground."
- The Sign Structure is intended to be on the Land permanently and is built with a wind load that is engineered so that "basically the sign will last forever."
- All of Clear Channel's leases have provisions, such as Paragraph 5 of the "Real Estate Lease" in effect at the time of the taking (allowing Clear Channel the right to remove all signs, structures, and improvements at any time). The purpose of these provisions is to prevent the signs from falling into the hands of Clear Channel's competitors.

---

**2.** The District relies on *Texas & N.O.R. Co. v. Schoenfeld*, 136 Tex. 173, 146 S.W.2d 724, 725–27 (1941) (holding that court of appeals erred by reversing trial court's finding that railroad tracks in question were not fixtures). Though the *Schoenfeld* court does state that, under Texas law, railroad tracks are not re- garded as fixtures, it does not state the rationale for this rule, nor does it apply the three-factor test for determining whether personal property has become a fixture. *See Logan v. Mullis*, 686 S.W.2d 605, 607 (Tex.1985). Therefore, the *Schoenfeld* case is not on point.

- If Clear Channel had owned the entire fee simple interest in the Land, the District would have to compensate Clear Channel for the loss of the Sign Structure. Clear Channel has owned some land on which there were signs. When this land was condemned, Clear Channel was paid compensation for the loss of the signs. The "only distinction here today is what they are talking about is the fact that [Clear Channel is] a lessee versus a fee owner."

- In general, Costa is aware of situations in which a landowner has not renewed a lease involving one of Clear Channel's sign structures. In such situations, Clear Channel generally removes its sign structure, and if it has the opportunity to relocate the sign structure, Clear Channel relocates it. The City of Houston Sign Code prohibits the Sign Structure in this case from being relocated in the City of Houston.[3]

The District's expert witness, Alan Dominy, testified that what he has seen points to the Sign Structure being personal property because billboards are moved routinely. Dominy stated that other than "people's opinions," there is nothing that he knows of in appraising techniques and methodology that defines a billboard as either personal property or real property. Evidence at trial indicated that in 2005,

Clear Channel rendered its sign structures to the Harris County Appraisal District on a form stating that the property is "business personal property."[4] Charles Stone, an employee of the Harris County Appraisal District, testified that he had no knowledge that Clear Channel has ever argued its sign structures should be taxed as real property. Stone also stated that Clear Channel could have rendered its property on a form describing it as real property and that the amount of tax paid by Clear Channel would not change, regardless of whether the sign structures are characterized as real property or personal property. The trial court also admitted into evidence various photographs of the Sign Structure.

The "Real Estate Lease" between the owner of the fee interest in the Land and Clear Channel in effect at the time of the taking contains the following material provisions:

5. This agreement is a Lease (not a License), and all signs, structures and improvements placed on the premises by or for the Lessee shall remain the property of the Lessee, and that, not withstanding [sic] the fact that the same constitute real estate fixtures, Lessee shall have the right to remove the same at any time during the term of the Lease, or after the expiration of the Lease.

---

**3.** Clear Channel's expert also testified that the Sign Structure could not be relocated within the same "trade area." However, he agreed that it could be relocated to other locations, such as Fort Bend County, Texas.

**4.** The District also introduced a petition filed in a separate, 2005 lawsuit in which Clear Channel challenged the method by which the Harris County Appraisal District appraised Clear Channel's sign structures for the 2005 tax year for personal property purposes. Given that Clear Channel rendered these structures as personal property, the unsworn state-

ments in this petition regarding valuation for personal property purposes are not surprising. The District does not assert on appeal that this lawsuit judicially estops Clear Channel from asserting in this case that the Sign Structure was a fixture at the time of the taking. Neither Clear Channel's rendition of its sign structures as personal property for the 2005 tax year, nor its statements in this petition mandate, as a matter of law, a finding that this particular sign structure was personal property and not a fixture on February 27, 2003, the date of the taking in this condemnation proceeding.

. . .

7. In the event of condemnation of the subject premises or any part thereof by proper authorities, or relocation of the highway, the Lessor grants to the Lessee the right to relocate its display(s) on Lessor's remaining property adjoining the condemned property or the relocated highway. Any condemnation award for Lessee's property shall accrue to Lessee.

■ Under the applicable standard of review, the evidence at trial would enable reasonable and fair-minded people to find that the Sign Structure was a fixture at the time of the taking.[5] *See Adkisson*, 173 S.W.2d at 297–301 (holding by Texas Supreme Court that trial court in condemnation action did not err in determining that oil well casing was a fixture at the time of the taking, even though as between lessor and lessee, lessee had the contractual right to remove the casing at the termination of the lease); *Stevenson v. Clausel*, 437 S.W.2d 404, 407 (Tex.App.-Houston [14th Dist.] 1969, no writ) (holding that trial evidence was legally sufficient to support trial court's fact finding that billboard had become a fixture, in case in which evidence showed that structure was supported by nine metal columns set in concrete to a depth of approximately eight feet and that structure extended to a "very considerable" height and a length of 90 feet). We conclude that the trial evidence is legally sufficient to support the trial court's determination that the Sign Structure was a fixture at the time of the taking.[6] We reject the District's argument that, as a matter of law, at the time of the taking, the Sign Structure was not a fixture.[7] Ac-

5. The District relies on *Trans–Nebraska Corp. v. Cummings Inc.*, 595 S.W.2d 922 (Tex.Civ. App.-Houston [14th Dist.] 1980, no writ). However, in that case, the trial court impliedly found that the sign structure was not a fixture. *See id.* at 923–24. The *Cummings* court upheld this finding of the trial court without providing any significant details as to the terms of the lease or the physical characteristics of the sign structure. *See id.* The *Cummings* court did not hold that all sign structures are personal property as a matter of law, and its decision does not conflict with our analysis today. *See id.* In addition, although the *Maro Co. v. State* court did discuss the general fixture analysis, it did so in obiter dicta in a real property taxation case. *See* 168 S.W.2d 510 (Tex.Civ.App.-Amarillo 1943, writ ref'd). Therefore, this case is not on point.

6. We also note that the Texas Supreme Court has concluded that, if personalty would be a fixture if attached to the land by the fee owner of the land, then a condemning authority must pay for such property as real estate in a condemnation action. *See Adkisson*, 173 S.W.2d at 299. Costa's testimony supports the conclusion that, if Clear Channel owned the Land, then the Sign Structure would be included in the valuation of the real property being taken by the District. Therefore, under *Adkisson*, the trial court did not err by treating the Sign Structure as part of the real property. *See id.*; *see also State v. Reina*, 218 S.W.3d 247, 249–50, 256–58 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (affirming trial court's condemnation award to owners of land and billboards, in case in which value was based in part on comparable sales of billboards).

7. The District also cites the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (hereinafter "Uniform Act"). *See* 42 U.S.C. §§ 4601–55 (2003). The District asserts that, to the extent the Uniform Act controls, it limits Clear Channel's damages. However, the District's theory as to this alleged limitation is based on a regulation regarding advertising signs that are personal property. *See* 49 C.F.R. § 24.301(f) (2006). Because there is legally sufficient evidence to support the trial court's determination that the Sign Structure is a fixture, this regulation would not apply, even if it were otherwise applicable, which Clear Channel disputes. In addition, the District has not cited and this court has not found any authority for the proposition that this federal regulation preempts or alters state law regarding condemnation of real property.

cordingly, we overrule the District's first issue.[8]

## B. Did the District preserve error as to its argument that the trial court abused its discretion by admitting certain expert testimony?

█ Under its second issue, the District asserts that the trial court abused its discretion by admitting certain testimony from Clear Channel's expert because his methodology and analysis allegedly were flawed for various reasons. The District asserts that it preserved error as to its second issue when the trial court denied its motion to exclude the expert's testimony. Although our record contains this motion, our record does not reflect that the trial court ruled on it. The District did not voice objections to the admission of the expert's testimony at trial based on the grounds stated in the second issue. Therefore, the District failed to preserve error. *See* Tex. R.App. P. 33.1(a); *Hirschfeld Steel Co., Inc. v. Kellogg Brown & Root*, 201 S.W.3d 272, 286–87 (Tex.App.-Houston [14th Dist.] 2006, no pet.). Accordingly, we overrule the District's second issue.

Having overruled both of the District's issues, we affirm the trial court's judgment.

---

**8.** The District also asserts in the alternative under its first issue that the Sign Structure was a trade fixture that is not compensable in a condemnation proceeding. Much of its argument is similar to its argument that the Sign Structure was not a real estate fixture as a matter of law. However, it appears that the District is also arguing that the Sign Structure is a trade fixture and therefore cannot be a real property fixture as a matter of law. Nonetheless, the cases upon which the District relies do not support this proposition. In addition, these cases involve disputes between the lessor and the lessee rather than condemnation actions. In a condemnation case, the Texas Supreme Court held that the trial court did not err in determining that oil well casing was a fixture at the time of the taking, even though as between lessor and lessee, lessee had the contractual right to remove the casing at the termination of the lease. *See Adkisson*, 173 S.W.2d at 297–301. Therefore, even if the District's trade-fixture theory were otherwise viable, it would conflict with this Texas Supreme Court precedent. We reject the District's trade-fixture argument.